## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| LEE SIMMONS and wife, JULIA SIMMONS, | ) |
| | ) |
| Plaintiffs/Appellants, | ) Henderson Chancery No. 11897 |
| | ) |
| VS. | ) Appeal No. 02A01-9810-CH-00282 |
| | ) |
| CITY OF LEXINGTON, TENNESSEE; CITY OF LEXINGTON BOARD OF ZONING APPEALS, TOWNSEND PLUMBING & ELECTRIC COMPANY, LYMAN TOWNSEND, LYNN TOWNSEND, and BARRY TOWNSEND, Individually and d/b/a TOWNSEND PLUMBING & ELECTRIC COMPANY; and LYNN TOWNSEND and wife, ELAINE TOWNSEND, | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants/Appellees. | ) |

**FILED**

**August 27, 1999**

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF HENDERSON COUNTY
AT LEXINGTON, TENNESSEE
THE HONORABLE JOE C. MORRIS, CHANCELLOR

**ROBERT B. VANDIVER, JR.**
**LAW OFFICE OF T. VERNER SMITH**
Jackson, Tennessee
Attorney for Appellant

**PAUL F. RICE**
**UTLEY & LATIMER, P.C.**
Jackson, Tennessee
Attorney for Appellees, Townsend Plumbing &
Electric Company, Lyman Townsend, Lynn Townsend
and Barry Townsend, Individually and d/b/a Townsend
Plumbing & Electric Company, Lynn Townsend and
Elaine Townsend

**KENNETH L. WALKER**
**WALKER LAW OFFICE**
Lexington, Tennessee
Attorney for Appellee, City of Lexington, Tennessee

**REVERSED AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

The trial court granted Defendants' Lyman, Barry, Lynn and Elaine Townsend,

individually and d/b/a Townsend Plumbing and Electric, ("Townsends" or "Appellees") Motion for Summary Judgment, thereby dismissing the complaint of Plaintiffs Lee and Julia Simmons ("Simmonses" or "Appellants") and allowing Townsends to continue construction on the property located at 158 Huntsman Avenue and operate their commercial plumbing and heating business from said property.

## I. Factual and Procedural History

The Simmonses own a house and lot located at 146 Huntsman Avenue in Lexington, Tennessee. Next door to the Simmonses' residence at 158 Huntsman Avenue, lies the property at issue in this case, a lot upon which sits a 24x30 building. This case involves the actions of Lynn and Barry Townsend d/b/a Townsend Plumbing & Electric, in purchasing the property, constructing an addition onto the building that more than tripled the square footage of the building, and moving their commercial plumbing and heating business into the enlarged building on the property.

The property at 158 Huntsman has been in commercial use since 1947. In 1959 the City of Lexington enacted a comprehensive zoning ordinance and the lot at 158 Huntsman became R-2 property. At that time, the lot and building at issue were owned by Troy and Florence Maxwell, who operated a woodworking shop and sold bee-keeping supplies from the building located on the property. With the passage of the zoning ordinance, the use of the building became a "legal, non-conforming" use. Ownership of the property passed through several hands before it was purchased by Lynn and Elaine Townsend on January 18, 1997.

Lyman Townsend, father of Lynn and Barry Townsend, originally did business as Townsend Plumbing and Heating until his sons took over the business in 1991. Lyman Townsend lives at 181 Huntsman Avenue (across the street from the property next door to Simmonses) and originally operated the business from his home. The Townsend business leased the 158 Huntsman property around 1967 and used it for storage. Lyman

2

Townsend was issued a business license to conduct business from his home at 181 Huntsman in 1973 and maintained that license until November of 1991. In July of 1991, Lynn and Barry Townsend d/b/a Townsend Plumbing and Electric were issued a business license at the 181 Huntsman address and have continually renewed the license to the present time.

On or about July 7, 1997, Lynn Townsend applied for and was granted a building permit to build a "shop on to a shop" at the 181 Huntsman address. However, the Townsends began construction of and enlargement onto the building located at 158 Huntsman. (It should be noted that the property at issue here did not have a formal address until 1997 when the area received 911 service).

After construction began complaints were made to the City of Lexington. Construction was halted and a Board of Zoning Appeals meeting was held on July 30, 1997. The Simmonses attended the meeting with their attorney, along with other neighbors and members of the public. The attorney for Lynn Townsend d/b/a Townsend Plumbing and Heating made a presentation to the Board concerning the proposed construction. The Board recessed and considered written briefs from both sides before reconvening in August, 1997. After seeking a legal opinion letter from the City Attorney, the Board ultimately approved the building permit and allowed construction to continue.

On October 23, 1997 the Simmonses filed a complaint in Chancery Court seeking to stop construction on the property and permanently enjoin the Townsends from operating their commercial business from the enlarged building on the property. Appellants contend that Tenn. Code Ann. §13-7-208(a)(2), provides original jurisdiction in the Chancery Court for contesting issuance or denial of a building permit. Appellants contend they were entitled to file an original action, conduct full discovery and to put on a *de novo* trial on the merits.

The trial court treated the case as one of review on certiorari, evidenced by the Chancellor's refusal to allow discovery of matters that should have been presented to the Board of Zoning appeals and by language in the final order. In the appeal before this Court,

3

the Appellees contend that the Chancellor should have dismissed the Complaint for failure to state a claim upon which relief could be granted, or alternatively that the Chancellor was correct in treating the Simmonses' complaint as an appeal on writ of certiorari.

Defendants Elaine and Lynn Townsend filed a Motion for Summary Judgment and a memorandum in support thereof and Lyman and Barry Townsend filed a motion to join in that motion. The Simmonses also filed a Motion for Summary Judgment. A hearing was held on July 9, 1998 and the trial court granted the Defendants' Motion for Summary Judgment. The Simmonses then timely filed this appeal.

## II. Writ of Certiorari v. Injunction or Mandamus

Tennessee Code Annotated §13-7-208 allows certain uses to continue as "non-conforming" uses if these uses existed immediately prior to zoning. Tenn. Code Ann. §13-7-208(a)(2) sets forth the remedy to be followed when there is a violation of the statute:

> (2) In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, converted or maintained, or any building, structure or land is or is proposed to be used in violation of any ordinance enacted under this part and part 3 of this chapter, the building commissioner, municipal counsel or other appropriate authority of the municipality, *or any adjacent or neighboring property owner who would be specially damaged by such violation, may, in addition to other remedies, institute injunction, mandamus or other appropriate action or proceeding* to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance or use, or to correct or abate such violation, or to prevent the occupancy of the building, structure or land.

Tenn. Code Ann. § 13-7-208(a)(2) (emphasis added).

The Simmonses followed this procedure by filing their complaint entitled "Complaint for Permanent Injunction and Alternatively Petition for Writ of Mandamus; and Additionally, Complaint to Abate Nuisance." The Townsends argued that a Writ of Certiorari is the only route that the Simmonses could or should have taken. The Townsends cite case law

4

stating the proper procedure for reviewing decisions of local boards of zoning appeals is the common-law writ of certiorari. Fallin v. Know County Board of Commissioners, 656 S.W.2d 338 (Tenn. 1983); McCallen v. City of Memphis, 786 S.W.2d 633 (Tenn. 1990).

The Townsends contend that the language in Tenn. Code Ann. §13-7-208(a)(2) does not create original jurisdiction in the Chancery Court over matters previously decided by administrative agencies. They argue that under the Simmonses' view, there would be no need for the various Boards of Zoning Appeals that the Legislature has authorized and that the judiciary would usurp the authority vested in the local electorate and violate the doctrine of separation of powers.

We do not agree that by allowing any adjacent or neighboring property owner who would be specially damaged by such violation to file a complaint in the trial court, there would be no need for the various Boards of Zoning Appeals. Our inspection of many zoning cases involving Boards of Zoning Appeals reveals that many such cases are cases in which a property owner has been denied a building permit because of zoning ordinances and the party being denied the permit appeals the decision, *See* Chadwell v. Know County, 980 S.W.2d. 378 (Tenn.App. 1998), or the grant of a building permit is opposed by outside parties. *See* Lions Head Homeowner's v. Metropolitan Bd. of Zoning Appeals, 968 S.W.2d 296 (Tenn.App. 1997).

Nor would allowing such a complaint to be filed usurp the authority vested in the local electorate and violate the doctrine of separation of powers. The Legislature has given any adjacent or neighboring property owner who would be specially damaged by such violation, in addition to other remedies, the specific remedy of injunction, mandamus or other appropriate action or proceeding to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance or use, or to correct or abate such violation, or to prevent the occupancy of the building, structure or land. Tenn. Code Ann. §13-7-208(a)(2).

Townsend Plumbing & Electric was issued a building permit allowing them to construct a building on Huntsman Avenue. According to the record of the Board of Zoning Appeals hearing, after the permit was issued, there were some calls, questions, or complaints voiced to the city fathers. They assessed the situation and felt that before there was any further action on the building construction, the Board should have an opportunity to look at it. The Board then issued public notices for a Board of Zoning Appeals meeting. The Simmons attended the meeting with their attorney, along with other neighbors and members of the public.

The Board of Zoning Appeals hearing was not a forum choice that was made by the Simmons. They Simmons appeared at the public hearing, along with other concerned neighbors. As the Simmons were particularly affected by the construction, they brought along an attorney to represent their interest. It must also be pointed out that there are no discovery procedures or pleadings in front of the Board of Zoning Appeals. Although the Simmons were aware that there was construction occurring on the property next door to them, they knew nothing else about the history of the property or the Lexington Zoning Ordinances until the July 30, 1997 hearing.

While it is true that the proper procedure for reviewing decisions of local boards of zoning appeals is the common-law writ of certiorari, Tenn. Code Ann. § 13-7-208(a)(2) specifically allows certain parties, namely the building commissioner, municipal counsel or other appropriate authority of the municipality, or any adjacent or neighboring property owner who would be specially damaged by such violation, in addition to other remedies, to institute injunction, mandamus or other appropriate action or proceeding to prevent such unlawful construction.

In construing statutes, we must assume that the legislature used each word in the statute purposely, and that the use of these words conveys some intent and has a meaning and purpose. Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998). Where words of the statute are clear and plain and fully express the legislature's intent, there is no room to

6

resort to auxiliary rules of statutory construction. Id. The provisions of Tenn. Code Ann. §13-7-208 allowing a neighbor to institute injunction, mandamus or other appropriate are clear and should be enforced as written. Moreover, Tenn. Code Ann. was amended in 1973 to add the grandfather language, while leaving the injunction/mandamus remedy. This further strengthens our opinion that the legislature intended to leave the specific remedy of injunction and mandamus, "in addition to other remedies," available to neighboring landowners who are involved in disputes governed by Tenn. Code Ann. §13-7-208.

The Townsends urged the trial court to find that the Simmonses' only remedy was a writ of certiorari. The scope of review, and that of the trial court, under a common law writ of certiorari, is to determine whether the Board exceeded its jurisdiction, followed unlawful procedure, acted arbitrarily or capriciously or acted without material evidence to support its decision. Hemontolor v. Wilson County Board of Zoning Appeals, 883 S.W.2d 613, 616 (Tenn.App.1994). In its final order, the trial court agreed with the Townsends and found that its inquiry was limited to whether or not the agency, in this case, the Lexington Board of Zoning Appeals, acted arbitrarily, capriciously or illegally. The trial court further found that its review was bound by the material evidence rule and found from the record presented that the Lexington Board of Zoning Appeals did not act illegally, capriciously or arbitrarily.

For all of the aforementioned reasons, we find that the trial court erred in treating the Simmonses' Complaint as a writ of certiorari and limiting the evidence to the record before the Board of Zoning Appeals.

The trial court did not consider any additional evidence in ruling on the summary judgment motions of the parties, finding that Simmonses' complaint should be treated as a writ of certiorari. However, during the trial court hearing on the application for temporary injunction, additional evidence was brought out regarding the dates on which the zoning legislation was passed and the date upon which the Townsends began using the subject

property. The trial court considered this additional evidence in ruling on the temporary injunction application.

The additional evidence set forth the following facts. On June 2, 1959 the City of Lexington adopted zoning ordinances which zoned the Huntsman Avenue area as R-2 Residential. The evidence establishes that Mr. and Mrs. Troy Maxwell owned the subject property next door to the Simmonses on June 2, 1959, and operated a woodworking shop and sold bee-keeping supplies from the building located on the property. Thereafter, according to the Answer of Lynn and Elaine Townsend, Townsend Plumbing & Electric Company began the operation of its business from 181 Huntsman Avenue (at the home of Lyman Townsend). In the mid-60's, Lyman Townsend leased a building located across the street from his residence, on the subject property and began using the building for storage for a heating, plumbing, and electrical business. The Townsend's connection with the subject property did not begin until after the passage of the zoning ordinances.

Tennessee Code Annotated §13-7-208 allows certain uses to continue as "non-conforming" uses if these uses existed immediately prior to zoning.

> **§13-7-208 Ordinances; enforcement; penalty for violation; remedies**
>
> (b) In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then *any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted*; provided, that no change in the use of the land is undertaken by such industry or business.
>
> (e) The provisions of subsections (b)-(d) apply only to land owned and in use by such affected business, and do not operate to permit expansion of an existing industry or business through the acquisition of additional land.

The Lexington ordinance, Section 11-202, is very similar in its effect and states that lawful non-conforming uses, buildings and structures existing at the time of the passage of this ordinance or any amendment thereto shall be allowed to remain, subject to certain

provisions. Unlike Tenn. Code Ann. §13-7-208, Section 11-202 states that an existing non-conforming use of a building or land may be changed to a conforming use or to another non-conforming use of the same classification or a classification less detrimental to the district in which it is located.

Under the language of the Tennessee statute, Mr. Maxwell's business use of the property and structure as a bee-keeping facility and woodworking shop would have been "grandfathered in" and allowed to continue as a legal non-conforming use. However, no other such use would be allowed this right. Under the less restrictive provision found in Section 11-202 of the Lexington Zoning Ordinances, the leasing of the subject premises to the Townsends for the purpose of storage of heating and plumbing materials, while not another non-conforming use of the *same classification*, might qualify as a classification less detrimental to the district in which it is located.

However, even If the Townsends' use of the premises for storage qualified as less detrimental under the Lexington ordinance, the inquiry does not stop there. The Townsends and Simmonses seem to agree that the subject property was used by the Townsends for storage up until the issuance of the new building permit. However, the Simmonses now contend that after construction on the property was completed in early 1998, the Townsends began full-scale operation of their commercial heating, plumbing, and air-conditioning business from this property. Employees of the business come and go on a daily basis. Townsend Plumbing & Electric regularly receives deliveries of heating and air conditioning units via tractor-trailer trucks to the property, literally in the middle of a residential neighborhood. Because the property is not big enough to accommodate the tractor-trailer trucks, the trucks are unloaded in the street by a backhoe. A picture of the unloading procedure is contained in the record. The property also contains an office and a phone and is the only place from which Townsend Plumbing & Electric does business.

The trial court must determine if such a use of the property is a classification less detrimental to the district in which it is located than Mr. Maxwell's original business use of

the property and structure as a bee-keeping facility and woodworking shop. If the trial court finds that the Townsends' use of the property is a legal non-conforming use, the trial court will then have to decide whether Tenn. Code Ann. § 13-7-208 and Lexington Ordinance Section 11-202 permit the Townsends to expand operations and construct additional facilities on the subject property.

For all the forgoing reasons we find that the trial court erred in granting summary judgment in favor of the Townsends. We therefore reverse and remand this case to the trial court for further proceedings consistent with this opinion.

## III. Conclusion

The judgment of the trial court is hereby reversed and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellees, for which execution may issue if necessary.

_____

HIGHERS, J.

CONCUR:

_____

CRAWFORD, P.J., W.S.


_____

FARMER, J.